IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| IN RE TYSON FOODS, INC., | ) | MDL Docket No. 1854 |
| | ) | 4:07-md-01854-CDL |
| FAIR LABOR STANDARDS ACT | ) | 1:07-cv-00093-CDL |
| | ) | 4:07-cv-02004-CDL |
| LITIGATION | ) | 4:07-cv-02008-CDL |
| | ) | 4:07-cv-02016-CDL |
| | ) | 4:08-cv-02000-CDL |
| | ) | 4:08-cv-02003-CDL |
| | ) | |

## BRIEF IN OPPOSITION TO SUMMARY JUDGMENT BASED ON THE PORTAL-TO-PORTAL ACT

Robert L. Wiggins, Jr.
Candis A. McGowan
Jake A. Kiser
Attorney at Law
Wiggins, Childs, Quinn &
Pantazis, LLC
The Kress Building,
301 19th Street North
Birmingham, AL 35203
205/314-0500
205-254-1500 (Facsimile)

Roger K. Doolittle
Attorney at Law
460 Briarwood Drive
Suite 500
Jackson, MS 39206-3060
(601) 957-9777

Christine E. Webber
Cohen, Milstein, Sellers & Toll
1100 New York Avenue, NW
West Tower, Suite 500
Washington, D.C. 20005-3964
Phone: (202) 408-4600
Fax: (202) 408-4699

## TABLE OF CONTENTS

**PAGE NO.**

I.    SUMMARY OF OPPOSITION TO PARTIAL SUMMARY JUDGMENT  . . . . . . . . . . 1

II.   ARGUMENT IN OPPOSITION TO PARTIAL SUMMARY JUDGMENT . . . . . . . . . . 3

    A.   The "Integral and Indispensable" Requirement Is  Subject To A Three-Part
       Test In This Circuit  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.   Tyson Misinterprets *Bonilla v. Baker Construction*  . . . . . . . . . . . . . . . . . . . . . . 5

    C.   Tyson Reaps The Primary Benefit From Donning And Doffing Which
       Allows Production And Sale of Unadulterated Poultry Products
       That Meet Customers' Contracts And Expectations . . . . . . . . . . . . . . . . . . . . . .  6

    D.   The Activities At Issue Are Both Required By Tyson And Necessary For
       The Plaintiffs To Be Able To Produce Uncontaminated Poultry Products
       That Meet Customer's Contracts And Expectations . . . . . . . . . . . . . . . . . . . . . . 12

    E.   Defendant's Pre-*Alvarez* Caselaw Is No Longer Persuasive Or Consistent
       With The Better Reasoned Post-*Alvarez* Decisions Involving Meat
       Or Poultry Processing Plants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    F.   *Gorman* Has Been Roundly Criticized By Other Courts . . . . . . . . . . . . . . . . . . 18

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

**PAGE NO.**

*Alvarez v. IBP, Inc.,*
    339 F.3d 894 (9th Cir. 2003), *affirmed*, 546 U.S. 21 (2005) . . . . . . . . . . . . 3, 4, 8, 10, 12,
                                 14

*Anderson v. Perdue Farms, Inc.,*
    604 F.Supp.2d 1339 (M.D. Ala. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 8, 11, 13

*Anderson v. Pilgrim's Pride Corp.,*
    147 F.Supp.2d 556 (E.D. Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Arrington v. National Broadcasting Co.,*
    531 F. Supp. 498, 503 (D.D.C. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Ballaris v. Wacker Siltronic Corp.,*
    370 F.3d 901 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 15

*Bishop v. United States,*
    72 Fed.Cl. 766, 780 (Fed.Cl.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Bonilla v. Baker Concrete Const., Inc.,*
    487 F.3d 1340, 1344 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

*Burks v. Equity Group-Eufaula Division, LLC,*
    571 F.Supp. 2d 1235 (M. D. Ala. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 4, 6, 9

*Chao v. Tyson Foods, Inc.,*
    568 F.Supp.2d 1300 (N.D. Ala. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 15, 19

*Davis v. Charoen Pokphand (USA), Inc.,*
    302 F.Supp.2d 1314 (M.D. Ala. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 13, 15, 16,
                                 17

*De Asencio v. Tyson Foods, Inc.,*
    342 F.3d 301 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 14, 16

*Dunlop v. City Elec., Inc.,*
    527 F.2d 394(5th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12, 13, 17

*Fox v. Tyson Foods, Inc.,*

2002 WL 32987224, No. CV-99-BE-1612-M, at *10 (N.D.Ala. Feb. 4, 2002) . . . . . . . 14

*Garcia v. Tyson Foods, Inc.,*
    474 F.Supp.2d 1240, 1245(D. Kan. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 14, 17

*Gatewood v. Koch Foods of Miss. LLC,*
    569 F. Supp. 2d 687 (S.D. Miss. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 9, 10, 14

*Gorman v. The Consolidated Edison Corp.,*
    488 F.3d 586 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

*IBP, Inc. v. Alvarez,*
    546 U.S. 21 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Jordan v. IBP, Inc.,*
    542 F.Supp.2d 790 (M.D. Tenn.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 6, 9,
                                                                                                                            11-12,
                                                                                                                            14, 16,
                                                                                                                            17, 18

*Mitchell v. King Packing Co.,*
    350 U.S. 260 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Perez v. Mountaire Farms, Inc.,*
    601 F. Supp. 2d 670 (D. MD 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

*Perez v. Mountaire Farms, Inc,*
    610 F. Supp. 2d 499 (D. MD 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 8, 10, 11, 12
                                                                                                                            13

*Pressley v. Sanderson Farms, Inc.,*
    2001 WL 850017 (S.D. Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Reich v. IBP, Inc.,*
    38 F.3d 1123 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Reich v. Oscar Meyer Foods Corp.,*
    1995 WL 1765643 (E.D. Tex. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Secretary of Labor v. E. R. Field, Inc.,*
    495 F.2d 749 (1st Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Spoerle v. Kraft Global, Inc.,*
    253 F.R.D. 434 (W.D. Wis. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 17, 19


*Steiner vs. Mitchell,*
    350 U.S. 247, 250-53 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 19

*Tum v. Barber Foods, Inc.,*
    360 F.3d 274 (1st Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 14, 15

**STATUTES:**

21 C.F.R. §110.10(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

29 C.F.R. § 790.8(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

## BRIEF IN OPPOSITION TO SUMMARY JUDGMENT BASED ON
## THE PORTAL-TO-PORTAL ACT

Tyson moves for partial summary judgment against the plaintiffs as a class on the ground that donning and doffing are not "integral and indispensable" activities that start and end the continuous workday for which wages must be paid. Summary judgment has not been sought against plaintiffs' claim that they are not paid for such activities at the beginning and end of meal breaks *during* the continuous workday. Such activities at meal breaks are not "preliminary" or "postliminary", as those terms are used in the Portal-To-Portal Act.[1]

## I.    SUMMARY OF OPPOSITION TO PARTIAL SUMMARY JUDGMENT

Plaintiffs' claim for "pre-and post-production" activities is based on the "continuous work day" rule set forth in *IBP v. Alvarez*, 546 U.S. 21, 29, 37 (2005). The continuous work day rule requires payment for all time spent from the first to last acts each day that are "integral and indispensable" to the plaintiffs' "principal activity." *Alvarez*, 546 U.S. 29 & 37.[2]  Every plaintiffs'

---

[1] *See, e.g., Burks v. Equity Group-Eufaula Division, LLC*, 571 F.Supp. 2d 1235, 1247 (M. D. Ala. 2008) (holding that Portal-To-Portal Act provisions "do not apply to activities performed during the continuous work day"); *see also Gatewood v. Koch Foods of Mississippi, LLC*, 569 F. Supp. 2d 687, 691-692 (S. D. Miss. 2008) (noting that the Portal Act applies only to "two activities", those that are "preliminary to or postliminary to said principal activity . . . which occur either prior to the time . . . such employee commences, or subsequent to the time . . . at which he ceases such principal activity or activities", quoting 29 U.S.C. §254(a)).

[2] *Burks*, 571 F.Supp. 2d at 1241 ("The Supreme Court has also stated that 'the 'workday' is generally defined as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities.' This concept is known as the 'continuous workday rule.'") (quoting *Alvarez*, 546 U.S. at 29 and 29 C.F.R. § 790.6(b)); *Gatewood*, 569 F. Supp. 2d at 695 ("If the gear is 'integral and indispensable,' then the donning and doffing of those items are principal activities and the time spent doing so is compensable under the FLSA."); *Perez v. Mountaire Farms, Inc.*, 610 F. Supp. 2d 499, 517 (D. Md. 2009) ("Thus, under the 'continuous work day' rule, any activity-donning and doffing, walking, waiting, sanitizing-undertaken by the employee after the work day has begun is compensable."); *Perez v. Mountaire Farms, Inc.*, 601 F. Supp. 2d 670, 682-683 (D. Md. 2009) (" If at the trial of this action the initial donning at the beginning of the day were found 'integral and indispensable' to chicken processing, that action is itself a principal activity and marks the beginning of the continuous work day.").

pre-and post-production claim turns on this common question of whether donning and doffing smocks, hairnets/beardnets and earplugs are "integral and indispensable" activities that start and end the "continuous work day" for which wages must be paid under the Act.

Tyson concedes that it requires the plaintiffs to don and doff smocks, hairnets/beardnets and earplugs and to wash and sanitize their hands or gloves upon entering the production areas of each plant.[3]  *See*  Pl.SOF ¶¶1, 19-30. It argues, however, that "[t]he requirement that plaintiffs wear certain sanitary clothing and wash up is not only mandated by the federal government, but is for the primary benefit of the consuming public, not defendant's business." Def. Br. at 9 (Doc. 593-2). Plaintiffs' *Statement Of Material Facts* shows that this is, at best, a disputed issue of fact inappropriate for summary judgment. Pl.SOF ¶¶1-41.[4]

Tyson's officials admit that such donning and doffing activities are required to be performed so that Tyson can produce and sell products that satisfy its customers' contracts and expectations. Pl.SOF ¶¶1-8.[5] Such officials concede that Tyson cannot operate its business on a profitable basis without certifying to its corporate customers that employees have donned, washed and sanitized the gear necessary to produce wholesome, unadulterated poultry products. Pl.SOF ¶¶1-8. They testify that donning and doffing clean smocks and hairnets/beardnets and washing hands or gloves are

---

[3] *Def. Decert. Br.* at 17 (Berry Street) ("The minimum for entry on the production floor for most positions is a smock, hairnet, beardnet (if necessary), and hearing protection."); *see, e.g.,* Cochrane at 73-77; James Carter 14-15 (Doc. 184) (April 16, 2009); Holman, 79:8-80:7, 90:2-23.

[4] "Pl.SOF" refers to the Plaintiffs' Statement of Material Facts filed separately in opposition to summary judgment under the Portal-To-Portal Act. "Def.SOF" refers to the defendants' section of such document.

[5] PX41 (#200); PX83 (#176); PX41 (#95)(Tyson's Code of Conduct); Bacorn 94:18-98:20, 104:12-105:20, 304:1-307:11; Gengler 135:14-22, 136:8-137:7, 137:19-138:3, 138:13-139:14, 139:22-142:19; Kilgore 339:4-340:4, 341:9-22, 342:21-343:23, 346:1-18; Holman 117:11-14, 118:1-11, 118:20-119-10; PX 1 (##153, 176, 177, 95, 200).

*required* activities essential to food safety, and food safety is "of critical importance to our customers." Pl.SOF ¶¶2-8 and fn. 5 *supra*.[6]

## II.    ARGUMENT IN OPPOSITION TO PARTIAL SUMMARY JUDGMENT

### A.    The "Integral and Indispensable" Requirement Is Subject To A Three-Part Test In This Circuit

Tyson argues that to "'determine whether preliminary or postliminary activities are so 'integral and indispensable' as to be compensable, [t]he factors to be considered are: (1) whether the activity is required by the employer, (2) whether the activity is necessary for the employee to perform his or her duties, and (3) whether the activity primarily benefits the employer.'" Def. Br. at 7 (Doc. 593-2). Plaintiffs do not dispute that these are the appropriate factors to apply.[7]

Plaintiffs' *Statement Of Material Facts* sets forth the abundant evidence creating a genuine issue of material fact as to each of these three factors. Pl.SOF ¶¶2-41. Cases considering donning and doffing of sanitary gear in meat processing plants since *Alvarez* have found such activities to

---

[6]  Tyson is mistaken in calling an overtime award a "windfall" under the Fair Labor Standards Act. *Def. Br.* at 1 (Doc. 593-2). It argues that "[b]usiness and workers have . . . bargained for an hourly wage that reflects the employees' ultimate contribution to the enterprise" and that the plaintiffs' FLSA claims are trying "to change retroactively the terms of the bargain." *Def. Br.* at 1 (Doc. 593-2). No evidence is cited for such "bargaining" because it never happened. The overtime requirements of the FLSA are not subject to waiver or "bargaining" except for the narrow provision for collective bargaining with a union set forth in §203(o). There is no union or collective bargaining at six of the eight plants at issue. The plaintiffs from the other two plants — Dardanelle and Corydon have shown that there was also no such bargaining in their opposition to Tyson's §203(o) summary judgment motion. Tyson also cites no evidence of other basis for its argument that "the cumulative time generates massive claims for overtime compensation" that are "potentially crippling." *Def. Br.* at 1 (Doc. 593-2). Tyson's argument was squarely rejected in *Jordan v. IBP and Tyson Foods, Inc.*, 542 F.Supp. 790, 794-795 (M.D. Tenn. 2008).

[7]  *See Burks, LLC*, 571 F.Supp. 2d at 1245-1246; *Alvarez v. IBP, Inc.*, 339 F.3d 894, 902-03 (9th Cir. 2003) ("To be 'integral and indispensable,' an activity must be necessary to the principal work performed and done for the benefit of the employer."); *Jordan v. IBP, Inc.*, 542 F.Supp.2d 790, 807-808 (M.D. Tenn. 2008) (defining "integral and indispensable" as "whether the activity is required by the employer and is necessary to the employee's principal activities, and whether the benefit of the activity inures primarily to the employer.").

3

be "integral and indispensable" to employees' "principal activity" on facts nearly identical to those here.[8]  The better-reasoned cases prior to *Alvarez* have also held such activities to be "integral and indispensable."[9]

Binding precedent in this Circuit has required that the Portal-To-Portal Act be construed narrowly. *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 398-399(5th Cir. 1976)[10].  The Department of Labor's regulations reaffirm that Section 4 of the Portal-to-Portal Act is an exemption that must be construed narrowly against the employer: "Congress did not intend by the Portal Act to change the general rule that the remedial provisions of the [FLSA] are to be given a liberal interpretation and exemptions therefrom are to be narrowly construed and limited to those who can meet the burden of showing that they come plainly and unmistakably within the terms and spirit of such an exemption." 29 C.F.R. § 790.2(a); *see  Dunlop*, 527 F.2d at 398 n.5 ("It is well settled that such administrative interpretations are entitled to great weight.")

---

[8] *See e.g., Jordan, supra* at 806-807; *Spoerle,*  527 F.Supp.2d at 864; *Garcia*, 474 F.Supp.2d at 1246-1247; *Chao v. Tyson Foods, Inc.*, 568 F.Supp. 2d 1300, 1311-1315 (N.D. Ala. 2008); *Gatewood*, 569 F. Supp. at 696-697; *Burks*, 571 F. Supp. at 1246; *Perez,*  610 F. Supp. 2d at 517-518; *Anderson v. Perdue Farms, Inc.*, 604 F. Supp. 2d 1339, 1354 (M.D. Ala. 2009);  *Perez*, 601 F. Supp. 2d at 676.

[9]  *See Alvarez v. IBP, Inc.*,339 F.3d 894, 903 (9th Cir. 2003), *affirmed*, 546 U.S. 21 (2005); *Ballaris*, 370 F.3d at 911;  *Tum v. Barber Foods, Inc.*, 360 F.3d 274, 279 (1st Cir. 2004); *Davis v. Charoen Pokphand (USA), Inc.*, 302 F.Supp.2d 1314, 1322 (M.D. Ala. 2004); *see generally De Asencio*, 500 F.3d at  373 (holding donning, doffing and sanitizing in a poultry processing plant to be "work" on the basis of standards similar to the standards for "integral and indispensable" activities).

[10]  *Dunlop* was based on the narrow construction rule for exemptions. *Dunlop.* 527 F.2d at 398-399. The Court characterized Section 4 of the Portal-to-Portal Act as "excepting language," *id.* at 398, and repeatedly referred to the provision as an "exemption", *id.* at 398-99. Consistent with this characterization, the Court applied a narrow construction to Section 4 in order to ensure for American workers "broad coverage" of the FLSA's benefits. *See also Arrington v. National Broadcasting Co.*, 531 F. Supp. 498, 503 (D.D.C. 1982) ("[T]he Portal-to-Portal Amendments were specifically directed at resolving an emergency situation and beyond that context they should be interpreted narrowly.").

**B.    Tyson Misinterprets *Bonilla v. Baker Construction***

Tyson misinterprets *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340 (11th Cir. 2007). That case involved no activities performed for the employer or that inured to its benefit. The time at issue was for traveling from home before the plaintiffs arrived at defendant's construction site inside the Miami Airport. The last part of such travel involved "pass[ing] through a single security checkpoint to the tarmac and then rid[ing] authorized buses or vans to their particular work site." *Id.* at 1341. The Court found that "[t]he employees did not perform any labor while waiting for or riding the vehicles either at the beginning or end of each work day", and that "[n]o instructions were given by the supervisors nor were any tools carried on the buses because the tools were kept at the work site." *Id.* at 1341-1342. Based on these facts, the Court held that the activities were not "integral and indispensable" to any "principal activity" performed for the employer's benefit. To be compensable "the activity in question must be work in the benefit of the employer." *Id.* at 1345. It was not enough that the plaintiffs necessarily had to travel through the airport's security checkpoint in order to reach their work site because "[i]f mere causal necessity was sufficient to constitute a compensable activity, all commuting would be compensable because it is a practical necessity for all workers to travel from their homes to their jobs." *Id.* at 1344. The activity must be both necessary and for the "primary benefit" of the employer in a way that is more than just getting to work from home.

*Bonilla* obviously does not involve anything remotely similar to the unpaid activities now before the Court. The plaintiffs have presented substantial evidence creating a genuine issue of material fact on the question of whether the required donning and doffing activities primarily benefit Tyson's business of producing and selling wholesome, unadulterated poultry products that meet its customers' contractual requirements and commercial expectations. Pl.SOF ¶¶1-42.

5

Tyson's contentions that *Bonilla* renders non-compensable activities performed because required by law, or that because activities are required by law, that the employer does not benefit, is directly contrary to Supreme Court authority. *Steiner vs. Mitchell*, 350 U.S. 247, 250-53 (1956). In *Steiner*, the clothes changing and showering was required by law, yet was found to be the definition of integral and indispensable. *Id.* The Courts that have considered *Bonilla* in the context of donning and doffing activities in meat processing plants have concluded that such activities are "integral and indispensable" to plaintiffs' "principal activity" of producing wholesome, uncontaminated food products. *See, e.g., Anderson v. Perdue Farms*, 604 F.Supp. 2d at 1349-1354, 1359; *Jordan*, 542 F.Supp. 2d at 800 n.12, 808, 810; *Chao*, 568 F.Supp. 2d at 1311 n.9, 1312 n.10; *Burks*, 571 F.Supp. 2d at 1245-46.

### C.    Tyson Reaps The Primary Benefit From Donning And Doffing Which Allows Production And Sale of Unadulterated Poultry Products That Meet Customer's Contracts And Expectations

Tyson's written policies provide direct evidence of the fact that activities which prevent poultry contamination primarily benefit Tyson's business of producing and selling wholesome, unadulterated poultry products that satisfy its corporate customers' contracts and expectations. Tyson's official Code of Conduct states that "Tyson's customers depend on the safety and quality of our products, as do our company's reputation and profitability." Pl.SOF ¶8; *see also* Pl.SOF ¶¶2-6. It also provides that "[t]he safety of Tyson's products is of critical importance to our company" that "[f]ood safety is, and will remain one of Tyson Foods' top priorities" and that "[i]n short, we must manufacture safe food products to protect customers and our company." *Id.*

Tyson's primary customers are the food and restaurant industry which sells poultry products to the consuming public, such as McDonald's, Kentucky Fried Chicken, Sysco, Costco, Sam's Club, grocery chains, restaurant chains, food suppliers or distributors, etc. Pl.SOF ¶¶6-8. Tyson's officials

6

designated to speak for and bind the corporation have admitted that "[s]afety and quality of our

product affect the company's reputation and profitability." Bacorn 306:22-307:11.

> Q.    And that's why you require employees to wear smocks, hair nets, beard nets?
> A.    That's why the -- depending on jobs, that some are required to wear smocks, hair nets.
> Q.    Beard nets?
> A.    Beard nets, sleeves, **to protect the product**.
> Q.    And that's in order for you to be able to **satisfy your customers**?
> A.    Yes, sir.
> Q.    Then it says: **"Tyson's customers depend on the safety and quality of our products."** Do you agree with that?
> A.    Yes.
> Q.    It says here that the -- in the helpful reminder section of this page 2-1 of Exhibit 83, that: "Safety and quality of our products affect the **company's reputation and profitability.**"
> Do you agree with that?
> A.    Yes, I do.
> Q.    So, if employees did not comply with the washing and sanitizing requirements, or the donning and doffing requirements **that would affect the company's profitability and reputation; correct?**
> A.    Correct.

Bacorn 306:4-307:11 (emphasis added). Bacorn is Tyson's Plant Manager designated to speak for

Tyson's Dardanelle plant. Tyson's designated spokesman for its Sedalia plant agreed with this,

testifying that Tyson's customers "impose certain food safety requirements" to prevent poultry

contamination and that it was necessary for Tyson to comply with its customers' food safety

requirements in order to stay in business. Gengler 135:14-22, 136:8-137:7, 137:19-138:3, 138:13-

139:14, 139:22-142:19. A third company spokesman for Tyson's Pine Bluff plant put it even more

bluntly, testifying that Tyson could be driven out of business if it did not comply with customers'

requirements that employees wear sanitary gear and wash their hands in the manner necessary to

prevent poultry contamination. Kilgore 339:4-340:4, 341:9-22, 342:21-343:13, 344:13-23, 346:1-18.

A fourth Plant Manager designated to speak for Tyson's Berry Street plant testified that "preventing

food contamination is an essential, necessary part of Tyson's business operation." Holman 117:11-14, 118:1-11, 118:20-119:10.  *See, e.g., Perez.*, 610 F. Supp. 2d at 518 (relying on company official's testimony that "Mountaire benefits from the employees' donning and doffing because the PPE protects the products from contamination, helps keep workers compensation payments down, keeps missed time to a minimum, and shields the company from pain and suffering payments.")

Courts have recognized that donning and doffing primarily benefits the poultry processor in its effort to produce and sell wholesome, uncontaminated poultry products to its corporate customers, and ultimately to the consuming public:

> Though employees of Koch Foods might be physically able to process chickens without sanitation gear, the resulting product would be adulterated and unmarketable. And undisputed evidence shows that Koch Foods' ordinary course of business is to produce and market a wholesome poultry product. As a practical matter, therefore, the Plaintiffs must work under the sanitary conditions that Koch Foods has already implemented in order for their services to have any real value.
>
> * * *
>
> Although the employees undoubtedly derive some benefit from the use of sanitary gear, the same gear also allows Koch Foods to maintain the cleanliness essential to prevent contamination to its poultry products. As one district court recently explained, "[t]his benefit is enormous when one considers the damage that would result to the defendants if they were to sell a contaminated food product."

*Gatewood,* 569 F. Supp. 2d at 696-697 (footnotes omitted).[11]

---

[11]*See also Perez*, 610 F. Supp. 2d at 517-518, 521 ("Donning and doffing the required PPE are paramount to . . . producing safe products. Indeed, donning and doffing is so important to the work done at Mountaire that employees are subject to discipline or termination for failing to comply with donning requirements. * * * These activities benefit Defendants because they help Defendants limit their products' exposure to bacteria and ensure that products are uncontaminated and clean."); *Anderson*, 604 F. Supp. 2d at 1354 ("Moreover, in our free-market economy, the sale of fresh, uncontaminated poultry results in significant benefits to the employer, just as the sale of stale or contaminated poultry would result in significant harm to the company."); *Davis*, 302 F.Supp.2d at 1322 ("These activities prevent . . . contamination . . . which would inevitably impede' [defendant's] chicken processing."; quoting *Alvarez*, 339 F.3d at 903); *Alvarez,* 339 F.3d at 903 ("It is beyond cavil that the donning, doffing, washing, and retrieving of protective gear is, at both broad and basic

The evidence in this case is the same as that in other cases from the poultry industry that utilize the same "Good Manufacturing Practices" ("GMPs") as Tyson. *See, e.g.*, *Gatewood*, 569 F. Supp. 2d at 695 ("According to company documents, the GMPs are promulgated 'to place quality and food safety atop our company's primary objectives' so that Koch Foods 'will remain a leading supplier of safe, high quality poultry products for the public.'"); compare *id.* with Pl.SOF ¶¶9-26. The Middle District of Alabama has recently explained that:

> The evidence presented to this Court establishes that the cleaning and sanitizing activities in this case are required by Equity because they are necessary for Plaintiffs to perform their duties, and because they are primarily for Equity's benefit. Equity has promulgated Good Manufacturing Practices ("GMP") that state the GMPs "were established to minimize the introduction of bacteria, contaminants, or foreign material into our manufacturing environment and must be adhered to by all team members." Among the enumerated GMPs are requirements that various articles of protective clothing must be maintained in "clean" or "sanitary" condition.

*Burks v. Equity Group-Eufaula Division, LLC*, 571 F.Supp. 2d 1235, 1246 (M. D. Ala. 2008).

The Middle District of Tennessee has also explained why these facts establish that donning, doffing, washing and sanitizing activities are "integral" and "indispensable" to employees' principal activity of producing uncontaminated poultry products:

> The defendants do not dispute that the purpose of the frock is to maintain sanitary conditions on the production floor and to prevent the defendants' product from becoming contaminated. * * * This benefit is enormous when one considers the damage that would result to the defendants if they were to sell a contaminated food product. The minor benefit to the employees of keeping their street clothes clean pales by comparison. As such, there is no question that, as a matter of law, it is the defendants who reap not only *some* benefit from the donning and doffing of the frocks, but the *primary* benefit of doing so.

*Jordan*, 542 F.Supp.2d at 807; *Gatewood*, 569 F. Supp. 2d at 695-696 ("The Plaintiffs have each

_____

levels, done for the benefit of IBP.").

testified that their 'principal work activity was not just to process chickens, but to process chickens in an uncontaminated manner.'"); *see also Perez*, 610 F. Supp. 2d at 517 ("Clean smocks are so integral to chicken processing that the company launders the smocks daily and provides them to the employees on racks in easily accessible hallways."); *Ballaris*, 370 F.3d at 911-12; *Alvarez*, 339 F.3d at 903; compare *id.* with Pl.SOF ¶¶27-29.

Doffing is also essential to the plaintiffs' principal activity of producing uncontaminated poultry products, as evidenced by the defendant's strict policy against taking the smock or other gear into the restrooms or outside the plant. Pl.SOF ¶¶35-41. The requirement of doffing the smock or other items before entering the restrooms, eating in the breakroom or going outside the plant can only benefit Tyson, not the employee. *Id.* The employee is in the restroom regardless. Only the sanitary gear stays out. Courts have paid particular attention to the fact that "requiring removal [of sanitary gear] prior to walking outside or going to the restroom can only benefit [the Company]", not the employee:

> It is undisputed that employees must remove sanitary gear anytime they leave the plant, while on break or returning home after their shift, when they go to the restroom, and when they choose to eat during their break. The Plaintiffs are not permitted to take their smocks home, and are not permitted to wear smocks of their own choosing. While leaving the smocks at the factory for laundering undoubtedly benefits both the Plaintiffs and Koch Foods, **requiring removal prior to walking outside or going to the restroom can only benefit Koch Foods**. Requiring removal prevents the smocks from being exposed to either the restrooms or the outdoors, and limits contamination to the chicken products-not to the employees. Moreover, Koch Foods retains tight control over the laundering and distribution of the smocks, and employees that wish to take them home and launder them personally will face disciplinary actions.

*Gatewood*, 569 F. Supp. 2d at 696-697 (emphasis added; footnote omitted); *see also Perez*, 610 F. Supp. 2d at 517. Donning and doffing also benefits Tyson by protecting against workplace hazards

and expensive employee injuries or disease. *Perez*, 610 F. Supp. 2d at 518 ("He testified that employees benefit from donning and doffing the PPE items inasmuch as the PPE items protects employees from workplace hazards.").

Because such unpaid activities are an integral part of the process of producing wholesome, uncontaminated poultry products, they are part and parcel of the principal activity that the plaintiffs are hired to perform.    Pl.SOF ¶¶27-29.    The very name of defendant's donning, doffing and sanitation policy is "Good Manufacturing Practices",  leaving no room to doubt that the unpaid activities at issue in this case are primarily for the benefit of the company's quality assurance, marketing and sales programs. *See, e.g., Anderson*, 604 F. Supp. 2d at 1350. Pl.SOF ¶¶9-26. The fact that the Quality Assurance Department is in charge of monitoring and enforcing the company's donning, doffing and sanitation policies is additional evidence that the primary beneficiary of such requirements is the company's quality assurance, marketing and sales programs. Pl.SOF ¶31. The term "Quality Assurance" obviously refers to the primary purpose and benefit of such monitoring and enforcement activities — to assure a quality product for Tyson's customers so that Tyson can continue to sell and profit from such quality products. Pl.SOF ¶¶9-31. Defendant's officials admit that the Quality Assurance supervisor inspects employees'  donning and sanitizing activities at the start of the shift and then randomly throughout the shift.  Pl.SOF ¶31 Moreover, Tyson's tight control over the design and laundering of the smock and other sanitary protective gear and equipment demonstrates that they are for the benefit of the company's marketing, sales and "quality assurance" programs, not the employee. *Jordan*, 542 F.Supp. 2d at 806.[12]

---

[12]The fact that the protective gear or equipment might also provide collateral benefits to the employee was held to be insufficient to detract from the primary benefit to the company's quality assurance, marketing and sales programs in *Jordan, supra*. Binding precedent in this Circuit establishes the same standard: "The fact that the employees too may have benefitted from filling out time sheets recording their hours worked and the compensation due them is not inconsistent with the

**D.     The Activities At Issue Are Both Required By Tyson And Necessary For The Plaintiffs To Be Able To Produce Uncontaminated Poultry Products That Meet Customers' Contracts And Expectations**

Tyson's officials have conceded the other two elements of the "integral and indispensable" test — that employees are required to don and doff smocks, hairnets/beardnets and earplugs upon entry of the production area and that such activities are necessary for them to be able to perform their principal activity of producing wholesome, unadulterated poultry products that meet their customer's contractual specifications and expectations. Pl.SOF ¶¶1-41. Tyson concedes that it requires all employees to don smocks, hairnets/beardnets and earplugs and to wash and sanitize their hands or gloves upon entry to the production areas of each of its plants. *See* fn. 3 *supra*.

Plaintiffs, however, do not rely on the mere fact that Tyson requires the donning, doffing, washing and sanitizing activities at issue, although that is certainly a factor supporting an inference that such activities are essential to plaintiffs' job. *See e.g. Jordan*, 542 F.Supp. 2d at 810; *Spoerle*, 527 F.Supp.2d at 864; *Ballaris*, 370 F.3d at 911-912; *Alvarez*, 339 F.3d at 903. Plaintiffs' evidence goes much further by showing that the required activities are essential to plaintiffs' ability to produce uncontaminated poultry products, which is their principal activity. Pl.SOF ¶¶1-41. Employees cannot produce wholesome, uncontaminated products without first performing the donning, washing and sanitizing activities at issue in this case. *See* Pl.SOF ¶¶ 27-29. As recently found in a similar poultry plant case: "Donning and doffing PPE is necessary for the employees to perform their duties. The question of whether an activity is "necessary" for the employee to perform his or her duties is

conclusion that the work was 'an integral and indispensable function of the defendant business.'". *Dunlop*, 527 F.2d at 400 n.11 (quoting *Secretary of Labor v. E. R. Field, Inc.,* 495 F.2d 749, 751 (1st Cir. 1974)); *Perez*, 610 F. Supp. 2d at 521 ("The donning and doffing and sanitizing also benefit Plaintiffs. Although not required, almost all employees sanitize their aprons, boots, and gloves before leaving the production area for their lunch break so that they may eat without blood and other chicken products on their persons. In the aggregate, however, I find and conclude that the benefit to Defendants outweigh the benefits to Plaintiffs.").

12

closely tied to the question of whether the employer requires the activity." *Anderson*, 604 F. Supp.

2d at 1352; se*e also Davis,* 302 F.Supp.2d 1314; *Perez*, 610 F. Supp. 2d  at 517 (D. MD 2009)

("[D]onning and doffing is necessary to the principal work of chicken processing." ).

"That an activity is required by an employer is evidence of its necessity." *Davis*, 302

F.Supp.2d at 1322; *Anderson.*, 604 F. Supp. 2d at 1352 ( "The requirement that employees don and

doff PPE is evidence that such activity is necessary to the employees' principal activities.").

Discipline, discharge and physical prevention of entry into the production room make it impossible

for plaintiffs to produce poultry products at Tyson without donning the required gear and equipment

and sanitizing their hands, gloves, aprons, sleeves, and shoes in the prescribed manner.  Pl.SOF

¶¶25-26; PX1, p. 11.   *See, e.g., Anderson,*  604 F. Supp. 2d at 1350 ("employees are subject to

discipline for violations of Perdue's GMP. In light of these undisputed facts, it is clear that the

donning and doffing of PPE is 'required by the employer.'").[13]

The rigorous manner in which Tyson monitors and enforces the required donning, doffing

and sanitizing activities further demonstrates that such activities are essential to plaintiffs' ability

to perform the principal activities of cutting-up and processing poultry in an uncontaminated manner.

---

[13] Binding precedent in this Circuit holds that "[t]he test to determine which activities are 'principal' and which are 'an integral and indispensable part' of such activities, is not whether the activities in question are uniquely related to the predominant activity of the business, but whether they are performed as part of the regular work of the employees in the ordinary course of business. It is thus irrelevant whether fueling and unloading trucks is 'directly related' to the business of electrical wiring; what is important is that such work is necessary to the business and is performed by the employees, primarily for the benefit of the employer, in the ordinary course of that business." *Dunlop*, 527 F.2d at 400-401.   The Court also noted that "Congress intended the words 'principal activities' to be construed liberally." *Id.*  Because the statute uses the plural term "activities", the Court held that this "'makes clear that in order for an activity to be a 'principal activity', it need not be predominant in some way over all other activities engaged in by the employee in performing his job" and that employees can have "several 'principal activities' during the workday." *Dunlop*, 527 F.2d at 398 (quoting 29 C.F.R. §790.8(a)).   "The 'principal' activities reflected in the statute are activities which the employee is 'employed to perform.'" *Id.* (quoting 29 C.F.R. §790.8(a).

Tyson prohibits employees from even entering the production area without donning the required protective gear and equipment and that employees are subject to discipline or discharge for infractions of this rule. Pl.SOF ¶¶1, 19, 22, 23, 25, 31. Tyson stations Quality Assurance employees at the entrance of its production areas to monitor employees donning, washing and sanitizing activities to make sure that employees do not proceed to their work station without having completed such activities. Pl.SOF ¶31; *see, e.g, Gatewood,* 569 F. Supp. 2d at 695 (" The Plaintiffs have stated that, if they enter the processing area without wearing the gear, a Quality Assurance Employee will 'holler out' to stop the employee."); *Jordan,* 542 F.Supp.2d at 805-806 (holding that donning and doffing of protective equipment was required by the employer where the employer employed a similar system to ensure compliance with its procedures); *Fox v. Tyson Foods, Inc.,* 2002 WL 32987224, No. CV-99-BE-1612-M, at *10 (N.D.Ala. Feb. 4, 2002).[14]

### E.    Defendant's Pre-*Alvarez* Caselaw Is No Longer Persuasive Or Consistent With The Better Reasoned Post-*Alvarez* Decisions Involving Meat Or Poultry Processing Plants

Tyson is mistaken in suggesting that the issue of what constitutes an "integral and indispensable" activity depends upon older case law decided before *Alvarez,* 546 U.S. at 36-37. Courts considering the issue have held that "[a]fter *Alvarez,* there can be little doubt that donning

---

[14] Tyson presents a false dichotomy between sanitary gear required by federal regulations and the same gear required to produce uncontaminated poultry products. Both the USDA's regulations and Tyson's corporate customers and business demands require the same thing — donning sanitary gear and washing and sanitizing hands or gloves in order to produce a wholesome, unadulterated poultry product for sale and distribution. *See* 21 C.F.R. § 110.10(b); *see also Gatewood,* 569 F. Supp. at 695; *Perez.,* 601 F. Supp. 2d at 676. The applicable Department of Labor regulation states that *either requirement* is enough to establish that the questioned activities are "integral and undispensable" for purposes of the Portal-To-Portal Act. Section 790.8 of the FLSA's overtime regulations states that activities may be integral and indispensable "where the changing of clothes on the employer's premises is required by law, by rules of the employer, or by the nature of the work." 29 C.F.R. §790.8(c), n. 65; *Alvarez,* 339 F.3d at 903; see also *Tum,* 360 F.3d at 279 ("Employees are required by Barber Foods and or government regulation to wear the gear. Therefore, these tasks are integral to the principal activity and therefore compensable.").

and doffing protective gear at the beginning and end of the workday are 'principal activities'" under

the Portal-To-Portal Act. *Spoerle*, 527 F.Supp.2d at 865; *Jordan*, 542 F.Supp.2d at 806-807; *Garcia*,

474 F.Supp.2d at 1246-1247; *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 371 (3rd Cir. 2007).

The cases relied upon by Tyson were decided without benefit of the Supreme Court's

decision in *Alvarez* except for one case from the Second Circuit (*Gorman*) which involved an electric

generation plant rather than a meat or poultry processing plant like those in *Alvarez*. The *Tum*

portion of the *Alvarez* decision involved the same type of chicken processing plant as the current

case. *See Alvarez*, 546 U.S. at 37-38. The Court noted in that part of the decision that "Barber

operates a poultry processing plant" with "six production lines [that] perform a variety of tasks that

require different protective clothing", and that each plaintiff "claimed that Barber's failure to

compensate them for (a) donning and doffing required protective gear and (b) the attendant walking

and waiting violated the statute." *Alvarez*, 546 U.S. at 37-38. Cases considering sanitary gear and

equipment in a poultry processing plant since *Alvarez* have found donning, doffing and sanitizing

the company's sanitary gear and equipment to be sufficiently "integral and indispensable" to start

and end the continuous workday rule set forth in *Alvarez*. *See e.g., Jordan*, 542 F.Supp.2d at 806-

807; *Gatewood*, 569 F. Supp. 2d at 696-697 *Burks*, 571 F. Supp. 2d at 1241; *Spoerle*, 527

F.Supp.2d at 864; *Garcia*, 474 F.Supp.2d at 1246-1247; *Chao v. Tyson Foods, Inc.*, 568 F.Supp.

2d 1300 (N.D. Ala. 2008). The better-reasoned cases prior to *Alvarez* have also held such activities

to be "integral and indispensable." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 903 (9th Cir. 2003), *affirmed*,

546 U.S. 21 (2005); *Ballaris*, 370 F.3d at 911; *Tum v. Barber Foods, Inc.*, 360 F.3d 274, 279 (1st

Cir. 2004); *Davis v. Charoen Pokphand (USA), Inc.*, 302 F.Supp.2d 1314, 1322 (M.D. Ala. 2004);

*De Asencio*, 500 F.3d at 373.

Defendant cites no decisions involving a meat or poultry processing plant since the Supreme

Court addressed two such plants in *Alvarez*, 546 U.S. at 521, 525-526. All three cases Tyson relies

upon from the meat or poultry industry were decided before *Alvarez* and primarily rely upon the

Tenth Circuit's 1994 decision in *Reich v. IBP, Inc.*, 38 F.3d 1123 (10ᵗʰ Cir. 1994). The *Jordan*

decision explains that "[t]he persuasive effect of the *Reich* decision is extremely limited [because]

it was issued before the Supreme Court's decision in *Alvarez*." *Jordan, supra* at 803-804. Several

other courts have reached the same conclusion. *Bishop v. United States,* 72 Fed.Cl. 766, 780

(Fed.Cl.2006) (concluding that in *Alvarez*, the Supreme Court "endorsed" the court of appeals'

conclusion that donning and doffing of protective gear are "principal activities"); *see also, De

Asencio*, 500 F.3d at 371 ("Although we recognize, of course, that whether donning and doffing is

work was not directly at issue in *Alvarez*, the Court could not have concluded that walking and

waiting time are compensable under the Portal-to-Portal Act if they were not work themselves.").[15]

The Third and Ninth Circuits have explicitly rejected the Tenth Circuit's decision in *Reich*.

*De Asencio*, 500 F.3d at 372; *Ballaris*, 370 F.3d at 911 & n.13; *see also Davis*, 302 F.Supp.2d at

1322 n.8 (holding that the Tenth Circuit's decision in *Reich* is unpersuasive). The Third Circuit held

that "the better view is that stated in *Ballaris* . . . which rejected *Reich* and reaffirmed the analysis

. . . in *Alvarez*, which was affirmed by the Supreme Court." *De Asencio*, 500 F.3d at 372.[16] A court

---

[15] Defendant relies on two decisions by the Eastern District of Texas — the 1995 decision in *Reich v. Oscar Meyer Foods Corp.*, 1995 WL 1765643 (E.D. Tex. 1995), and the 2001 decision in *Anderson v. Pilgrim's Pride Corp.*, 147 F.Supp.2d 556 (E.D. Tex. 2001) — and a 2001 decision from the Southern District of Texas in *Pressley v. Sanderson Farms, Inc.*, 2001 WL 850017 (S.D. Tex. 2001). All three of such decisions rely heavily on the Tenth Circuit's 1994 decision in *Reich*, 38 F.3d at 1125. Several courts have found these cases unpersuasive. *See, e.g., Davis*, 302 F.Supp.2d at 1322 n.8; *Spoerle*, 527 F.Supp.2d at 867; *Chao, supra* at *7-*8. The recent decision in *Spoerle* held that the reasoning of *Reich v. Oscar Meyer, supra*, is "conclusory and it was decided before the Supreme Court decided *Alvarez*." *Spoerle*, 527 F.Supp.2d at 867.

[16] While this holding was in the context of whether donning and doffing is compensable "work", the *Jordan* court has held that "[f]actors relevant to whether an activity is integral and indispensable are essentially the same as those relevant to whether an activity qualifies as work,

from the Tenth Circuit has explained why even that Circuit may no longer follow its own decision

in *Reich* after *Alvarez*:

> The court is convinced that the Circuit, if given the opportunity to revisit the issues in *Reich,* would approach its analysis of the pertinent issues differently in light of *Alvarez,* regardless of whether the Circuit ultimately reached the same conclusions concerning compensability. Significantly, the Circuit did not analyze the issues through the lens of the continuous workday rule as clarified by the Supreme Court in *Alvarez.* In light of *Alvarez,* it would seem that the Circuit, if revisiting *Reich* today, would focus not on whether the donning and doffing constituted "work" within the meaning of *Tennessee Coal,* but on whether standard protective clothing and gear are "integral and indispensable" to the work performed by production employees. Indeed, the Circuit in *Reich,* although in dicta, certainly stated that standard clothing and gear are integral and indispensable to the work performed by production employees, suggesting that the Circuit might reach a different conclusion on compensability if analyzed in the context of *Alvarez.*

*Garcia v. Tyson Foods, Inc.*, 474 F.Supp.2d 1240, 1246 (D. Kan. 2007).

Tyson's other cases were also decided on the basis of the overly-restrictive pre-*Alvarez* view

that *Steiner* does not apply to the less dangerous work environment in meat and poultry processing

plants. Tyson's effort to limit *Steiner* to employees exposed to toxic chemicals was rejected in both

*Jordan, supra* at 808, and *Spoerle, supra* at 864-865 for this reason.[17]

---

requiring consideration of whether the activity is required by the employer and is necessary to the employee's principal activities, and whether the benefit of the activity inures primarily to the employer. " *Jordan,* 542 F.Supp. 2d at 808.

[17] Courts in the Fifth and Eleventh Circuit may be precluded from following the Tenth Circuit's decision in *Reich* because it is inconsistent with *Dunlop,* which is controlling in this Circuit. *Reich* held that "although required and of some value to the employer, the outergarments are primarily for the benefit of the employee, and thus . . . not integral and indispensable." *Reich,* 38 F.3d at 1126. The binding precedent in this Circuit, however, in *Dunlop* which adopted the opposite standard — that "[t]he fact that the employees too may have benefitted . . . is not inconsistent with the conclusion that the work was an integral and indispensable function of the defendant business." *Dunlop,* 527 F.2d at 400 n.11; *see also Chao,* 568 F. Supp. 2d at 1311-1312 (holding that the similar decision in *Gorman* is in conflict with *Dunlop.*).

F.    ***Gorman* Has Been Roundly Criticized By Other Courts**

*Gorman v. The Consolidated Edison Corp.*, 488 F.3d 586 (2d Cir. 2007), involved an electric

generation plant in which the only gear at issue was *safety* boots, gloves and a helmet — gear that

is inapposite to the *sanitary* gear and equipment at issue here.   There was no evidence that any of the

safety items in *Gorman* were essential to the production of sanitary food products, or that the

plaintiffs in that case had to repeatedly sanitize themselves and their gear as they entered and left a

sanitary production area.   The recent decision in *Jordan, supra*, explained why the electric generation

plant in *Gorman* is distinguishable from the activities at issue in a food processing plant.

> . . . *Gorman* is distinguishable from the case at hand. The gear at issue
> in *Gorman* was only safety boots, safety glasses, and a helmet. The
> "gear" at issue here — that is, the frock that the plaintiffs are required
> to don and doff — can hardly be characterized as generic, as
> evidenced by the facts that the frock has certain design features
> specific to the job and that plaintiffs are not permitted to use a frock
> of their choosing. Moreover, the plaintiffs are not permitted to clean,
> store, or don their frocks at home, are required by the defendants to
> wear those frocks at all times on the production floor, and are subject
> to discipline for failing to do so; additionally, the frocks are both
> necessary to the plaintiffs' jobs and benefit the defendants, in that they
> allow for the maintenance of sanitary conditions on the production
> floor and prevent the defendants' product from becoming
> contaminated. Thus, the donning and doffing of the frocks do not
> constitute the "changing of clothes and showering under normal
> conditions," which is not compensable under *Steiner,* 350 U.S. at
> 249, 76 S.Ct. 330, but rather an integral and indispensable activity for
> which compensation is required.

*Jordan, supra* at 809 (citations omitted).   In an identical case brought by the Department of Labor

against Tyson Foods' plant in Blountsville, Alabama, the Northern District of Alabama has held that

*Gorman* is not persuasive in the context of meat or poultry processing plants, and is in conflict with

the binding Fifth Circuit  precedent in *Dunlop*:

> *Gorman,* however, is less on point with the present action than
> *Alvarez,* as the Second Circuit there did not address donning and

18

doffing claims in a meat or poultry processing plant, nor did it consider factors similar to *Dunlop's* three-part analysis. Therefore, while the Second Circuit espouses a narrow application of *Steiner*, binding, former Fifth Circuit precedent persuades the court that the Eleventh Circuit would more likely agree with the position of the Ninth Circuit as expressed in *Alvarez.*

*Chao*, 568 F. Supp. 2d at 1311-1312. The reasoning in *Gorman* has been held "truly bizarre" by a

third court. *Spoerle*, 527 F.Supp.2d at 864.

> The [*Gorman*] court appears to be saying that the holding of *Steiner* does not apply unless the "work is done in a lethal atmosphere." In other words, unless the activity is necessary to prevent the employee from actually *dying,* it is not "integral" to a principal activity. From a public policy perspective, this reading is obviously troubling because it creates an uncomfortable distinction between hazards that kill and hazards that maim (or pose only a *risk* of death) and suggests that an employee is entitled to compensation for protecting herself from the former only.
>
> Fortunately, *Steiner* does not support such a distinction. Although it is true that the facts of *Steiner* involved life-threatening risks, the Court did not limit its holding to that situation, but said only that the facts before it presented one of the "clear[est]" examples of an activity that was integral and dispensable to the principal activity. *Steiner,* 350 U.S. at 256, 76 S.Ct. 330. Further, the legislative history cited by the Court distinguished between a job that the employee "could not perform ... without putting on certain clothes" and an activity that was "merely a convenience to the employee and not directly related to the specific work." *Id.* at 258, 76 S.Ct. 330. Because the equipment in this case is donned for safety purposes and is required by law and company policy, it cannot be said to be "merely a convenience" for the employee.

*Spoerle*, 527 F.Supp.2d at 864-865; *accord Gatewood*, 569 F.Supp. 2d 695-696. Even the Supreme

Court applied *Steiner* to a meat processing facility in a companion case issued the same day as

*Steiner* itself. *Mitchell v. King Packing Co.*, 350 U.S. 260 (1956).[18]

---

[18] The Court applied *Steiner* in deciding whether activities were "integral or indispensable" even though the case did not involve any dangerous or lethal work environment like that of the battery plant in *Steiner*. It held that sharpening of knives was "integral and indispensable" to the employees' ability to perform their principal activity of processing meat despite the fact that such sharpening was preliminary to the actual use of the knives on the production line. The sanitation

## CONCLUSION

For all the foregoing reasons, summary judgement is inappropriate. The facts are plainly in dispute.

October 2, 2009                                    Respectfully submitted,

s/Robert L. Wiggins, Jr.
Robert L. Wiggins, Jr.
Candis McGowan
Jake A. Kiser
Wiggins, Childs, Quinn & Pantazis
The Kress Building
301 19th Street North
Birmingham, AL 35203
Tel: (205) 314-0513
Fax: (205) 254-1500
cmcgowan@wcqp.com

Roger Doolittle
460 Briarwood Drive
Suite 310
Jackson, MS 39206-3060
Tel (601) 957-9777
Fax: (601) 957-9779
RogerKDoolittle@aol.com

Christine E. Webber
Joseph M. Sellers
Christine E. Webber
COHEN, MILSTEIN, HAUSFELD
& TOLL PLLC
1100 New York Avenue, NW
West Tower, Suite 500
Washington, D.C. 20005
Phone: (202) 408-4600
Fax: (202) 408-4699
jsellers@cohenmilstein.com;
cwebber@cohenmilstein.com

Jairus Gilden

activities at issue here, including donning and doffing the requisite sanitary gear and equipment and sanitizing hands, gloves, shoes, aprons and sleeves, are no different.

Debra Gardner
Public Justice Center
1 N Charles St Ste 200
Baltimore MD 21201
Tel (410) 625-9409
Fax (410) 625-9423
gardnerd@publicjustice.org

of counsel, Metcalf, Kaspari, Howard,
Engdahl & Lazarus
333 Parkdale Plaza
1660 South Highway 100
Minneapolis, MN 55416-1573
Tel (312) 239-0524
Fax (800) 845-1962
jgilden@sbcglobal.net

## Certificate of Service

I hereby certify that on October 2, 2009, that a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to counsel for all parties by operation of the court's electronic filing system.

/s/ Robert L. Wiggins, Jr.
Robert L. Wiggins, Jr.